UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------

ANTHONY BENSON, on behalf of himself and
all others similarly situated,

                        Plaintiff,

         v.

THE RIDGE WALLET LLC,

                        Defendant.

----------------------------------------------------------------

Case No. 1:25-cv-7876

**CLASS ACTION COMPLAINT
& DEMAND FOR JURY
TRIAL**

Plaintiff,  ANTHONY BENSON**,** ("Plaintiff" or "Mr. Benson"), on behalf of himself and

all others similarly situated (collectively, "Plaintiffs"), by and through their undersigned counsel,

JOSEPH & NORINSBERG, LLC, as and for their putative class action complaint upon Defendant,

THE RIDGE WALLET LLC, ("RIDGE" or "Defendant"), hereby alleges as follows:

## **INTRODUCTION**

1.       Plaintiff resides in Bronx County and is permanently disabled due to **bilateral enucleation**, a condition resulting in the complete absence of visual function. His diagnosis was certified by Dr. Jeffrey G. Odel, MD, a neuro-ophthalmologist at Columbia University Irving Medical Center, on September 10, 2022. (See Exhibit A.) Mr. Benson functions with total blindness and requires screen-reading software such as NVDA to access digital content. He has received ongoing orientation and mobility training through Lighthouse Guild programs for several years and remains highly motivated to regain functional independence through assistive technology. He cannot travel independently and relies on tactile and auditory cues for navigation, communication, and daily tasks.

2.       Plaintiff brings this civil action against Defendant The Ridge Wallet LLC, for its

failure to design, construct, maintain, and operate its interactive website, www.ridge.com, in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. Defendant's denial of full and equal access to its website—and therefore to the essential products and services offered therein—constitutes a violation of Plaintiff's rights under the Americans with Disabilities Act (ADA).

3.      The Ridge Wallet is a private consumer goods company headquartered in Santa Monica, California, specializing in direct-to-consumer sales of RFI (Radio Frequency Identification)-blocking wallets, travel gear, and men's accessories. Certain products manufactured and sold by Defendant were recommended by Lighthouse Guild mobility trainers for their tactile organization and RFID protection. Its website, www.ridge.com, serves as the primary digital gateway for product discovery, e-commerce transactions, customer support, and brand engagement. Despite its commercial scale and stated commitment to design excellence, Defendant has failed to ensure that its website is accessible to blind and visually impaired individuals, including Plaintiff. [1]

4.      The Ridge Wallet's product line includes items directly relevant to Mr. Benson's personal needs and interests. On two distinct dates in July and August, 2025, Plaintiff attempted to access www.ridge.com to purchase two specific products: (i) **The Ridge Wallet – Stonewashed Titanium**, marketed as slim, RFID-blocking, and ultra-durable, and (ii) the **Commuter Backpack Pro – Royal Black**, a weatherproof travel bag marketed for everyday use and tech protection. Both products are prominently featured on Ridge's website and are marketed with accessibility-neutral language, yet the site itself remains inaccessible to blind consumers.

---

[1] Based on a 2010 U.S. Census Bureau report, approximately 8.1 million people in the United States are visually-impaired, including 2.0 million who are blind, and according to the American Foundation for the Blind's 2015 report, approximately 400,000 visually-impaired persons live in the State of New York.

5.      In its September 25, 2018, letter, the U.S. Department of Justice reaffirmed that Title III of the Americans with Disabilities Act applies to websites operated by public accommodations, even in the absence of formal regulations. The DOJ stated.

> "The Department [of Justice] first articulated its interpretation that the ADA applies to public accommodations' websites over 20 years ago. This interpretation is consistent with the ADA's title III requirement that the goods, services, privileges, or activities provided by places of public accommodation be equally accessible to people with disabilities."

6.      When Mr. Benson attempted to use Ridge's website on each of these occasions, he encountered widespread accessibility barriers that rendered the site unusable with his assistive technology, NVDA. These barriers included unlabeled buttons, missing alternative text for product images, empty links, inaccessible modal dialogs, and non-descriptive link text. The site also failed to provide any accessible pathway for contacting customer service via phone or text. These deficiencies violate the Web Content Accessibility Guidelines (WCAG) 2.1 Level AA, the prevailing industry standard for digital accessibility, and denied Plaintiff equal access to Ridge's goods and services. Plaintiff's attempts were not exploratory—they were task-specific, repeated, and conducted from within Plaintiff's home in Bronx County, New York.

7.      Because Defendant's interactive Website, www.ridge.com including all portions thereof or accessed thereon (collectively, the "Website" or "Defendant's Website"), is not equally accessible to blind and visually-impaired consumers, it violates the ADA. Plaintiff seeks a permanent injunction to cause a change in Defendant's corporate policies, practices, and procedures so that Defendant's Website will become and remain accessible to blind and visually-impaired individuals.

8.      By failing to make its Website compatible with screen reader programs, Defendant deprives blind and visually impaired individuals of the benefits of its online goods, content, and services—benefits it freely affords to nondisabled individuals. This exclusion perpetuates the

isolation and stigma that Title III of the ADA was enacted to eliminate.

9.    The Department of Justice has consistently affirmed that the ADA applies to web content. As stated in its guidance:

> "When Congress enacted the ADA in 1990, it intended for the ADA to keep pace with the rapidly changing technology of our times. Since 1996, the Department of Justice has consistently taken the position that the ADA applies to web content." "Inaccessible web content means that people with disabilities are denied equal access to information. An inaccessible website can exclude people just as much as steps at an entrance to a physical location. Ensuring web accessibility for people with disabilities is a priority for the Department of Justice. In recent years, a multitude of services have moved online, and people rely on websites like never before for all aspects of daily living." A website with inaccessible features can limit the ability of people with disabilities to access a public accommodation's goods, services, and privileges available through that website. "For people with disabilities, website accessibility and other forms of accessible ICT are necessities—not luxuries or conveniences—that foster independence, economic self-sufficiency and active, meaningful participation in civic life." Despite this clear mandate, the absence of specific regulatory standards has contributed to widespread digital inaccessibility across commercial platforms. [2]

10.    Nearly every aspect of modern life—particularly in a post-pandemic world—has

---

[2] The Justice Department Issued New Web Accessibility Guidance Under the Americans with Disabilities Act Titled, Guidance on Web Accessibility and the ADA. (This guidance describes how state and local governments and businesses open to the public can make sure that their websites are accessible to people with disabilities as required by the Americans with Disabilities Act (ADA). *https://beta.ada.gov/web-guidance/ Published March 16, 2022.*

moved online, including housing, banking, voting, medicine, government services, groceries, restaurant reservations, news, commerce, and entertainment. As digital platforms evolve, it is critical that online content evolves in an inclusive manner to ensure that people with disabilities—representing up to one in four adults in the United States, according to the CDC—have equal access to the products, services, and information they need, regardless of any visual, auditory, physical, cognitive, or other impairments. See, (https://www.cdc.gov/ncbddd/disabilityandhealth/infographic-disability-impacts-all.html)

11.    Defendant's Website is not equally accessible to blind and visually impaired consumers; therefore, Defendant is in violation of the ADA. Plaintiff now seeks a permanent injunction to cause a change in the Defendant's corporate policies, practices, and procedures so that Defendant's Website will become and remain accessible to blind and visually-impaired consumers.

## JURISDICTION AND VENUE

12.    This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1331 and 42 U.S.C. § 12181, as Plaintiff's claims arise under Title III of the ADA, 42 U.S.C. § 12181 et seq., and 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.

13.    This Court has supplemental jurisdiction over Plaintiff's state and local law claims pursuant to 28 U.S.C. § 1367, including claims under the New York State Human Rights Law (N.Y. Exec. Law Article 15), the New York City Human Rights Law (N.Y.C. Admin. Code § 8-101 et seq.), and New York General Business Law § 349.

14.    Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (2) because Defendant conducts and continues to conduct a substantial and significant amount of business in

this District, Defendant is subject to personal jurisdiction in this District, and a significant portion of the conduct complained of herein occurred in this judicial District.

15.     Defendant is subject to personal jurisdiction in the Southern District of New York. Defendant has committed the acts and omissions alleged herein in this District, causing injury and violating rights protected by the ADA. A substantial part of the events giving rise to Plaintiff's claims occurred in this District: on multiple occasions, Plaintiff was denied full use and enjoyment of Defendant's interactive website while attempting to access it from his home in Bronx County, New York. These barriers—including those encountered while attempting to obtain information about the Stonewashed Titanium RFID-Blocking Wallet and the Commuter Backpack Pro – Royal Black—have repeatedly denied Plaintiff equal access and now deter him from returning to the site. Plaintiff also sought information about product pricing, terms of service, refund policies, and privacy practices.

16.     Defendant participates in New York's economic life by clearly performing business over the Internet. Through its interactive Website, Defendant entered into contracts for the sale of its products and services with residents of New York. These online sales contracts involve, and require, Defendant's knowing and repeated transmission of computer files over the Internet. *See Reed v. 1-800-Flowers.com, Inc.*, 327 F. Supp. 3d 539 (E.D.N.Y. 2018) (exercising personal jurisdiction over forum plaintiff's website accessibility claims against out-of-forum website operator); *Andrews v. Blick Art Materials*, LLC, 286 F. Supp. 3d 365 (E.D.N.Y. 2017); *Ford Motor Co. v. Mont. Eighth Judicial Dist. Court*, 592 U. S. ___ (2021) (personal jurisdiction can be found as long as the company conducted business in the consumer's home state that relates in some way to the consumer's injuries, such as engaging in other transactions for similar products there); *South Dakota v. Wayfair, Inc.*, 585 U. S. ___ (2018); *Godfried v. Ford*

*Motor Co.*, 2021 US Dist LEXIS 87012 [D Me May 6, 2021, No. 1:19-cv-00372-NT]; *Romero v. 88 Acres Foods, Inc.*, 2022 US Dist LEXIS 9040 [SDNY Jan. 18, 2022, No. 20-cv-9215 (KMW)]; *Sanchez v. NutCo, Inc.*, 2022 US Dist LEXIS 51247 [SDNY Mar. 22, 2022, No. 20-cv-10107 (JPO)]; *Panarra v. HTC Corporation* [WDNY April 15, 2022, No. 6:20-cv-6991 (FPG-MWP), DKT. 53].

17.    The Court is empowered to issue a declaratory judgment under 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

18.    Plaintiff, Anthony Benson, at all relevant times, is a resident of New York, New York.

19.    Plaintiff is a blind, visually-impaired handicapped person and a member of a protected class of individuals under the ADA, under 42 U.S.C. § 12102(1)-(2), and the regulations implementing the ADA set forth at 28 CFR § 36.101 *et seq*., the NYSHRL, NYCHRL, and GBL § 349.

20.    Defendant, The RIDGE WALLET LLC, is and was, at all relevant times herein, a Delaware Domestic Limited Liability Company registered with the California Secretary of State as an Out-of-State Limited Liability Company. Its registered California business address is 28632 Roadside Drive, Unit 265, Agoura Hills, CA 91301, and its designated agent for service of process is Daniel Kane. While Ridge Wallet maintains a commercial presence in San Francisco, including marketing and executive operations, its formal registration does not list 425 Market Street as its principal executive office.

21.    Defendant, The RIDGE WALLET LLC, operates the highly interactive website www.ridge.com, which functions as a digital sales establishment and constitutes a place of public accommodation under Title III of the Americans with Disabilities Act. Through this platform, Defendant offers consumers access to a wide array of goods and services, including product

information, pricing, promotional bundles, terms of service, refund and privacy policies, and customer support. Defendant's website is used to advertise, market, and transact business with consumers in the State of New York and throughout the United States.

22.    Defendant's website qualifies as a place of public accommodation within the meaning of 42 U.S.C. § 12181(7), as it operates as an online retail store offering goods and services to the general public. The website is a service, privilege, and advantage of Defendant's commercial enterprise, and its inaccessibility to blind and visually impaired individuals constitutes unlawful discrimination under Title III of the ADA.

## NATURE OF ACTION

23.    This action arises from The Ridge Wallet LLC's failure to design, construct, maintain, and operate its website, www.ridge.com, in a manner that is fully accessible to and independently usable by blind and visually impaired individuals. As a digital public accommodation under Title III of the Americans with Disabilities Act ("ADA"), Ridge Wallet's website must provide equal access. Its ongoing inaccessibility constitutes unlawful discrimination.

24.    Plaintiff Anthony Benson is a legally blind individual residing in Bronx County, New York, within an assisted living facility for the blind funded by Lighthouse Guild in Manhattan. Mr. Benson's blindness is medically documented as bilateral enucleation, resulting in the complete absence of visual function. His diagnosis was certified by Dr. Jeffrey G. Odel, MD, a neuro-ophthalmologist at Columbia University Irving Medical Center, on September 10, 2022. See Exhibit A.

25.    Mr. Benson regularly attends Lighthouse Guild programs, where he receives mobility training, financial literacy instruction, and digital access coaching. Lighthouse staff have repeatedly warned blind residents—including Mr. Benson—about the heightened risk of RFID

skimming, a form of digital theft in which concealed scanners are used to read and clone credit cards and IDs carried in unprotected wallets.

26.    In response to these warnings, Mr. Benson and other blind consumers have been strongly encouraged to use RFID-blocking wallets to protect their personal information. Ridge Wallet's flagship product—a slim, RFID-blocking wallet made of aluminum, titanium, or carbon fiber—is specifically designed to prevent such theft. Its minimalist design also facilitates tactile organization, enabling blind users to distinguish and access cards independently.

27.    On July 15 and 16, 2025, Mr. Benson attempted to purchase a Carbon Fiber Ridge Wallet and a Frequent Flyer Kit from www.ridge.com but was unable to do so due to persistent accessibility barriers. These barriers included:

- Unlabeled buttons and graphics on product pages
- Missing alt text on promotional banners and product thumbnails, including the homepage graphic stating "Slim, RFID-blocking, Guaranteed for Life" and the Frequent Flyer Kit thumbnail
- Navigation traps and inaccessible dropdown menus
- Checkout forms incompatible with screen-reading software
- Broken links on support and FAQ pages

28.    These issues were confirmed through independent audits conducted using SortSite software, which identified multiple violations of WCAG 2.1 Level AA standards and flagged broken links across key pages. See Exhibits B–D.

29.    The inability to access The Ridge Wallet's website denies Mr. Benson—and thousands of similarly situated blind consumers—equal access to products essential to their financial safety and personal autonomy. Ridge Wallet LLC has failed to take reasonable steps to ensure digital accessibility, despite being on notice of its obligations under the ADA and the

widespread reliance on screen-reading technology among blind users.

30.    Plaintiff seeks declaratory and injunctive relief requiring Ridge Wallet LLC to remediate its website, adopt a formal accessibility policy, and ensure ongoing compliance with WCAG 2.1 standards. Plaintiff also seeks attorney's fees and costs pursuant to 42 U.S.C. § 12205.

**STANDING**

31.    Plaintiff has standing to bring this action under Title III of the ADA. He is legally blind due to bilateral enucleation, a condition resulting in the complete absence of visual function. This diagnosis was certified by Dr. Jeffrey G. Odel, MD, of Columbia University Irving Medical Center, on September 10, 2022. See Exhibit A.

32.    Mr. Benson resides in Bronx County, New York, and regularly attends Lighthouse Guild programs in Manhattan, where he receives support for independent living, mobility training, and financial safety. He relies exclusively on screen-reading software, specifically NVDA, to access digital content and manage personal affairs.

33.    On July 15 and 16, 2025, Plaintiff attempted to access www.ridge.com to purchase two specific products:

- The Ridge Wallet – Stonewashed Titanium – priced at $125, marketed as slim, RFID-blocking, and ultra-durable
- Frequent Flyer Kit – priced at $495, a weatherproof, impact-resistant travel bundle

34.    These products were selected based on Lighthouse Guild's repeated warnings about RFID skimming and the need for blind consumers to carry RFID-blocking wallets and carry bags. Ridge's products are uniquely suited to Plaintiff's needs, offering tactile organization and digital protection.

35.    Plaintiff was denied full and equal access due to persistent accessibility barriers,

including:

- Unlabeled buttons preventing product selection
- Missing alt. text on promotional graphics and product thumbnails
- Navigation traps and inaccessible form fields
- Broken links blocking access to support and warranty information

36.     On July 14, 2025, Plaintiff visited www.ridge.com and navigated to the "Travel"
section to explore the Frequent Flyer Kit. He was highly interested in this product because it offers
RFID-blocking protection, weatherproof construction, and impact-resistant materials—features
critical to his financial safety and independent travel. Plaintiff selected Ridge's Frequent Flyer Kit
over other third-party travel gear because it was recommended by Lighthouse Guild mobility
trainers and integrates with his existing accessibility tools. While attempting to review product
specifications and complete the purchase, Plaintiff encountered multiple barriers. The "Add to
Cart" button lacked screen reader labeling, and product details were embedded in visual containers
without text alternatives. The checkout process relied on mouse-dependent navigation, including
hover-triggered menus and clickable icons that could not be activated using keyboard commands.
These issues prevented Plaintiff from completing the transaction or confirming the product's
suitability.

37.     Despite multiple attempts on July 14, July 21, and August 5, 2025, Plaintiff was
unable to complete his order due to persistent accessibility barriers. Each visit was task-specific
and conducted from his home in Bronx County, New York. Plaintiff remains interested in using
the website and intends to return once it is made accessible—not out of curiosity, but out of
necessity. For him, Defendant's website is not a convenience; it is a lifeline. Like millions of
Americans, Plaintiff relies on websites to perform essential tasks—whether locating products,

checking availability, or accessing time-sensitive promotions. These digital platforms are not optional; they are integral to daily life. For individuals with disabilities, the ability to navigate a website independently is a matter of dignity, autonomy, and equal participation in the modern marketplace.

38.     On August 20, 2025, Plaintiff's in-house accessibility expert conducted a comprehensive audit of www.ridge.com using PowerMapper's SortSite program. The audit included broken link analysis and accessibility validation across consumer-facing sections of the site, including the "Shop," "Travel," "Support," and "Wallets" pages. The findings revealed widespread and persistent violations of the Web Content Accessibility Guidelines (WCAG) 2.1 and Section 508 of the Rehabilitation Act. A separate audit conducted on August 21, 2025, using the WAVE (Web Accessibility Evaluation Tool) corroborated Plaintiff's declaration and revealed additional violations.

39.     The broken link Report identified over 2,100 pages containing links with empty href or src attributes, including critical product pages such as RFID-blocking wallets, modular key cases, and weatherproof luggage kits. These broken links triggered JavaScript errors and prevented screen readers from interpreting or activating key navigation elements. Several pages also contained anchor links targeting non-existent IDs, rendering skip links and internal navigation unusable for blind users relying on keyboard access.

40.     The accessibility validation Report uncovered 53 Level A violations across 2,532 pages, including autoplaying videos without pause controls, missing alt. text, improperly structured tables, and mouse-dependent controls lacking keyboard equivalents. For example, the Frequent Flyer Kit page included visual charts and promotional banners that could not be activated via keyboard navigation. Numerous pages used placeholder alt text such as "wallet1," "banner3,"

or "promo2025," which screen readers read aloud instead of meaningful descriptions, obstructing comprehension for blind users.

41.    The audit also revealed structural markup errors that interfere with screen reader functionality, including duplicate IDs, empty button elements, and form controls with no accessible name. Over 800 pages contained untagged PDFs, making critical documentation inaccessible. Additionally, the tab order on many pages did not follow a logical sequence, causing confusion and disorientation during keyboard navigation.

42.    These findings constitute conclusive evidence of inaccessibility. The violations are not isolated or superficial—they are systemic, recurring across thousands of pages, and directly impact the ability of blind users to identify, select, and purchase products, access warranty information, and engage with customer support. The presence of these barriers confirms that Defendant's website is not equally accessible and fails to meet the minimum standards required under Title III of the ADA.

43.    The accessibility barriers identified—such as missing alt text on product images, non-descriptive link text (e.g., "click here"), unlabeled form fields in checkout and login processes, keyboard traps, inaccessible modal dialogs, and improper heading structures—were not isolated glitches. They were systemic failures that denied Plaintiff the ability to browse, evaluate, and purchase products with independence and dignity. These barriers violate WCAG 2.1 Level AA and constitute unlawful discrimination under Title III of the ADA, 42 U.S.C. § 12182.

44.    Plaintiff's experience on www.ridge.com was not merely inconvenient—it was exclusionary. Each attempt to access product pages, review specifications, or complete transactions ended in frustration, as unlabeled buttons, inaccessible modals, and mouse-dependent features blocked his path. He was unable to compare similar products, confirm compatibility, or

complete purchases independently. These barriers functioned as digital walls, preventing him from participating in the same online experience that sighted users enjoy.

45.    Plaintiff's intent to return to www.ridge.com is not speculative—it is driven by necessity. He relies on Ridge Wallet's products to safeguard his financial information and support his independent travel. The website remains uniquely positioned to meet these needs, yet until the digital barriers are removed, Plaintiff remains excluded from a platform that promotes durability and accessibility but fails to deliver it to blind users.

46.    Plaintiff will return to www.ridge.com because it is the only platform that offers the specific combination of RFID-blocking wallets, modular travel kits, and warranty-backed accessories he requires to perform essential tasks related to his professional and personal life. He is a blind individual who produces audio content, engages in digital training for other blind users, and relies on tactile, durable products to maintain his workflow. Ridge Wallet's proprietary designs and direct-to-consumer model are not replicated by third-party vendors. The website is the exclusive source for verifying product specifications, initiating warranty claims, and accessing promotional bundles. Plaintiff has attempted to use other retail platforms, including Amazon, Best Buy, and Newegg, but these sites do not provide the same level of technical detail, product integration, or support infrastructure. His intent to return is not speculative or generalized—it is driven by necessity and tied to specific tasks that cannot be completed elsewhere. Until the website is made accessible, Plaintiff remains excluded from a digital platform essential to his autonomy, productivity, and equal participation in the modern marketplace. His return is imminent, repeated, and unavoidable.

# STANDING

47.     Plaintiff, ANTHONY BENSON, has standing to bring this action under Title III of the ADA. He is legally blind due to bilateral enucleation, a condition resulting in the complete absence of visual function. This diagnosis was certified **by** Dr. Jeffrey G. Odel, MD, **of** Columbia University Irving Medical Center, on September 10, 2022. **See Exhibit A.**

48.     Mr. Benson resides in Bronx County, New York, and regularly attends Lighthouse Guild programs in Manhattan, where he receives support for independent living and financial safety. He relies exclusively on screen-reading software, including JAWS and NVDA, to access digital content and manage personal affairs.

49.     On July 15 and 16, 2025, Plaintiff attempted to access www.ridge.com to purchase two (2) specific products:

**Carbon Fiber Ridge Wallet** – priced at $125, marketed as slim, RFID-blocking, and ultra-durable

**Frequent Flyer Kit** – priced at $495, a weatherproof, impact-resistant travel bundle

50.     These products were selected based on Lighthouse Guild's repeated warnings about RFID skimming and the need for blind consumers to carry RFID-blocking wallets. Ridge's products are uniquely suited to Plaintiff's needs, offering tactile organization and digital protection.

51.     Plaintiff was denied full and equal access due to persistent accessibility barriers, including:

- Unlabeled buttons preventing product selection

- Missing alt. text on promotional graphics and product thumbnails
- Navigation traps and inaccessible form fields
- Broken links blocking access to support and warranty information

52.     On July 14, 2025, Plaintiff Anthony Benson visited www.ridge.com and navigated to the "Travel" section to explore the Frequent Flyer Kit. He was highly interested in this product because it offers RFID-blocking protection, weatherproof construction, and impact-resistant materials—features critical to his financial safety and independent travel. Plaintiff selected Ridge Wallet's Frequent Flyer Kit over other third-party travel gear because it was recommended by Lighthouse Guild mobility trainers and integrates with his existing accessibility tools. While attempting to review the product specifications and complete the purchase, Plaintiff encountered multiple access barriers. The "Add to Cart" button was not labeled for screen reader access, and the product details were presented in visual containers without text alternatives. Additionally, the checkout process relied on mouse-dependent navigation, including hover-triggered menus and clickable icons that could not be activated using keyboard commands. These issues prevented Plaintiff from completing the transaction or confirming the product's suitability.

53.     Despite multiple attempts on July 14, 2025, Plaintiff was unable to complete his order due to persistent accessibility barriers, which prevented him from identifying, selecting, and purchasing the items he needed. He returned to the website on July 21, 2025, and again on August 5, 2025, actively seeking to complete these tasks. On each occasion, he was blocked by the same and additional accessibility barriers. Plaintiff remains interested in using the website and intends to return to it once it is made accessible—not out of curiosity, but out of necessity. For him, Defendant's website is not a convenience; it is a lifeline. Like millions of Americans, Plaintiff

relies on websites to perform essential tasks—whether locating products, checking availability, or accessing time-sensitive promotions. These digital platforms are not optional; they are integral to daily life. For individuals with disabilities, the ability to navigate a website independently is a matter of dignity, autonomy, and equal participation in the modern marketplace.

54.    On August 20, 2025, Plaintiff's in-house accessibility expert conducted a comprehensive audit of www.ridge.com using PowerMapper's SortSite program. The audit included both broken link analysis and accessibility validation across consumer-facing sections of the site, including the "Shop," "Travel," "Support," and "Wallets" pages. The findings revealed widespread and persistent violations of the Web Content Accessibility Guidelines (WCAG) 2.1 and Section 508 of the Rehabilitation Act. A technical audit of www.ridge.com was also conducted on August 18, 2025, using WAVE (Web Accessibility Evaluation Tool), which corroborated Plaintiff's declaration and revealed additional violations.

55.    The broken link report identified over 2,100 pages containing links with empty href or src attributes, including critical product pages such as RFID-blocking wallets, modular key cases, and weatherproof luggage kits. These broken links caused JavaScript errors and prevented screen readers from interpreting or activating key navigation elements. Several pages also contained anchor links targeting non-existent IDs, rendering skip links and internal navigation unusable for blind users relying on keyboard access.

56.    The accessibility validation report uncovered 53 Level A violations across 2,532 pages, including autoplaying videos without pause controls, missing alt text, improperly structured tables, and mouse-dependent controls lacking keyboard equivalents. For example, the Frequent Flyer Kit page included visual charts and promotional banners that could not be activated via

keyboard navigation. Numerous pages used placeholder alt text such as "wallet1," "banner3," or "promo2025," which screen readers read aloud instead of meaningful descriptions, obstructing comprehension for blind users.

57.    The audit also revealed structural markup errors that interfere with screen reader functionality, including duplicate IDs, empty button elements, and form controls with no accessible name. Over 800 pages contained untagged PDFs, making critical documentation inaccessible. Additionally, the tab order on many pages did not follow a logical sequence, causing confusion and disorientation during keyboard navigation.

58.    These findings constitute conclusive evidence of inaccessibility. The violations are not isolated or superficial—they are systemic, recurring across thousands of pages and directly impact the ability of blind users to identify, select, and purchase products, access warranty information, and engage with customer support. The presence of these barriers confirms that Defendant's website is not equally accessible and fails to meet the minimum standards required under Title III of the ADA.

59.    The accessibility barriers identified—such as missing alt text on product images, non-descriptive link text (e.g., "click here"), unlabeled form fields in checkout and login processes, keyboard traps, inaccessible modal dialogs, and improper heading structures—were not isolated glitches. They were systemic failures that denied Plaintiff the ability to browse, evaluate, and purchase products with independence and dignity. These barriers violate the Web Content Accessibility Guidelines (WCAG) 2.1 Level AA and constitute unlawful discrimination under Title III of the Americans with Disabilities Act, 42 U.S.C. § 12182.

60.    Plaintiff's experience on www.ridge.com was not merely inconvenient—it was

exclusionary. Each attempt to access product pages, review specifications, or complete transactions ended in frustration, as unlabeled buttons, inaccessible modals, and mouse-dependent features blocked his path. He was unable to compare similar products, confirm compatibility, or complete purchases independently. These barriers functioned as digital walls, preventing him from participating in the same online experience that sighted users enjoy.

61.    Plaintiff Anthony Benson will return to www.ridge.com  because it is the only platform that offers the specific combination of RFID-blocking wallets, modular travel kits, and warranty-backed accessories he requires to perform essential tasks related to his professional and personal life. He is a blind individual who produces audio content, engages in digital training for other blind users, and relies on tactile, durable products to maintain his workflow. Ridge Wallet's proprietary designs and direct-to-consumer model are not replicated by third-party vendors. The website is the exclusive source for verifying product specifications, initiating warranty claims, and accessing promotional bundles. Plaintiff has attempted to use other retail platforms, including Amazon, Best Buy, and Newegg, but these sites do not provide the same level of technical detail, product integration, or support infrastructure. His intent to return is not speculative or generalized—it is driven by necessity, and it is tied to specific tasks that cannot be completed elsewhere. Until the website is made accessible, Plaintiff remains excluded from a digital platform that is essential to his autonomy, productivity, and equal participation in the modern marketplace. His return is imminent, repeated, and unavoidable.

## CLASS ACTION ALLEGATIONS

62.    Plaintiff ANTHONY BENSON, brings this action on behalf of himself, and all

others similarly situated, seeking certification of a nationwide class under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals in the United States who have attempted to access www.ridge.com and were denied equal access to its products, services, and support due to persistent digital accessibility barriers during the relevant statutory period.

63.     Plaintiff also seeks certification of a New York Subclass under Fed. R. Civ. P. 23(a) and 23(b)(2): all legally blind individuals residing in the City and State of New York who have attempted to access www.ridge.com  and were similarly denied equal access to its offerings due to the same systemic barriers.

64.     Common questions of law and fact exist among the Class, including:

- Whether www.ridge.com qualifies as a "public accommodation" under Title III of the ADA;
- Whether Defendant's website constitutes a "place or provider of public accommodation" under the NYCHRL;
- Whether the website's persistent accessibility barriers violate the ADA by denying blind users full and equal access to NVIDIA's products, services, and support;
- Whether the same barriers violate the NYCHRL, NYCRL, and NYSHRL by excluding blind users from meaningful participation in the digital marketplace.

65.     Plaintiff's claims are typical of the Class. Like other blind individuals, he relies on screen-reading software and keyboard navigation to access online platforms. He encountered the same systemic barriers—unlabeled buttons, inaccessible forms, mouse-dependent controls, and unreadable product specifications—that affect all Class members.

66.     Plaintiff will fairly and adequately represent the interests of the Class. He has retained counsel experienced in disability rights and complex class action litigation. Plaintiff has no interests antagonistic to those of the Class and seeks injunctive and declaratory relief applicable

20

to all members.

67.     Class certification is appropriate under Fed. R. Civ. P. 23(b)(2) because Defendant

has acted or failed to act on grounds generally applicable to the Class, warranting injunctive relief

to remediate the website's accessibility barriers.

68.     Alternatively, certification is appropriate under Fed. R. Civ. P. 23(b)(3) because

common questions of law and fact predominate over individual issues, and a class action is the

most efficient and fair method for adjudicating these claims.

69.     Maintaining this action as a class proceeding will promote judicial economy by

avoiding duplicative litigation and ensuring uniform relief for a class likely to include hundreds,

if not thousands, of blind individuals who have attempted to use www.ridge.com and faced

exclusion.

### FIRST CAUSE OF ACTION
### (Violations of the ADA, 42 U.S.C. § 12182 *et seq.*)

70.     Plaintiff, ANTHONY BENSON, on behalf of himself and the Class Members,

repeats and  realleges every allegation of the preceding paragraphs as if fully set forth herein.

71.     Section 302(a) of Title III of the ADA, 42 U.S.C. § 12101 *et seq.,* provides:

No individual shall be discriminated against on the basis of disability in the full and
equal enjoyment of the goods, services, facilities, privileges, advantages, or
accommodations of any place of public accommodation by any person who owns,
leases (or leases to), or operates a place of public accommodation.

42 U.S.C. § 12182(a).

72.     Defendant's  Website that is offered as a link to the company is a service that is

offered to the general public, and as such, must be equally accessible to all potential consumers.

73.     Under Section 302(b)(1) of Title III of the ADA, it is unlawful discrimination to

21

deny individuals with disabilities the opportunity to participate in or benefit from the products, services, facilities, privileges, advantages, or accommodations of an entity. 42 U.S.C. § 12182(b)(1)(A)(i).

74.    Under Section 302(b)(2) of Title III of the ADA, unlawful discrimination also includes, <u>inter</u> <u>alia</u>:

> [A] failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations; [and] a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden.

42 U.S.C. § 12182(b)(2)(A)(ii)-(iii).

75.    The acts alleged herein constitute violations of Title III of the ADA and the regulations promulgated thereunder. Plaintiff, who is a member of a protected class of persons under the ADA, has a physical disability that substantially limits her major life activity of sight within the meaning of 42 U.S.C. §§ 12102(1)(A)-(2)(A). Furthermore, Plaintiff has been denied full and equal access to the Website, has not been provided services that are provided to other patrons who are not disabled, and has been provided services that are inferior to the services provided to non-disabled persons. Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as the violations are ongoing.

76.    Under 42 U.S.C. § 12188 and the remedies, procedures, and rights set forth and incorporated therein, Plaintiff requests relief as set forth within the section **Prayer For Relief**

below.

## SECOND CAUSE OF ACTION
### (Violations of the New York City Human Rights Law)
### ("NYCHRL")

77.     Plaintiff, ANTHONY BENSON, on behalf of himself and the New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

78.     N.Y.C. Administrative Code § 8-107(4)(a) provides that "It shall be an unlawful discriminatory practice for any person who is the owner, franchisor, franchisee, lessor, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation: [b]ecause of any person's . . . disability . . . directly or indirectly: [t]o refuse, withhold from or deny to such person the full and equal enjoyment, on equal terms and conditions, of any of the accommodations, advantages, services, facilities or privileges of the place or provider of public accommodation".

79.     Defendant is subject to NYCHRL because it owns and operates the Website www.ridge.com, making it a "person" within the meaning of N.Y.C. Admin. Code § 8-102(1).

80.     Defendant violates N.Y.C. Administrative Code § 8-107(4)(a) in refusing to update or remove access barriers to Defendant's Website, causing the Website and the services integrated completely inaccessible to the blind. This inaccessibility denies blind patrons full and equal access to the facilities, products, and services that Defendant makes available to the non-disabled public.

81.     Defendant is required to "make reasonable accommodation to the needs of persons with disabilities . . . any person prohibited by the provisions of [§ 8-107 *et seq.*] from discriminating based on disability not to provide a reasonable accommodation to enable a person with a disability

23

to satisfy the essential requisites of a job or enjoy the right or rights in question provided that the disability is known or should have been known by the covered entity." N.Y.C. Admin. Code § 8-107(15)(a).

82.     Defendant's actions constitute willful intentional discrimination against the Sub-Class based on a disability in violation of the N.Y.C. Administrative Code § 8107(4)(a) and § 8-107(15)(a), in that Defendant has:

      a.      constructed and maintained a Website that is inaccessible to blind class members with knowledge of the discrimination; and/or

      b.      constructed and maintained a Website that is sufficiently intuitive and/or obvious that is inaccessible to blind class members; and/or

      c.      failed to take actions to correct these access barriers in the face of substantial harm and discrimination to blind class members.

83.     Defendant has failed to take any prompt and equitable steps to remedy the discriminatory conduct as these violations are ongoing.

84.     As such, Defendant discriminates and will continue in the future to discriminate against Plaintiff and other members of the proposed class and subclass based on disability in the full and equal enjoyment of the products, services, facilities, privileges, advantages, accommodations and/or opportunities of the Website under N.Y.C. Administrative Code § 8-107(4)(a). Unless the Court enjoins Defendant from continuing to engage in these unlawful practices, Plaintiff and members of the Class will continue to suffer irreparable harm.

85.     Defendant's actions were to violate the NYCHRL, and therefore, Plaintiff invokes the right to injunctive relief to remedy the discrimination.

86.     Plaintiff is also entitled to compensatory damages, as well as civil penalties and

fines under N.Y.C. Administrative Code § 8-120(8) and § 8-126(a) for each offense as well as punitive damages pursuant to § 8-502.

87.     Plaintiff is also entitled to reasonable attorneys' fees and costs.

88.     Under N.Y.C. Administrative Code § 8-120 and § 8-126 and the remedies, procedures, and rights set forth and incorporated therein Plaintiff prays for judgment as set forth below.

## THIRD CAUSE OF ACTION
**(New York State Human Rights Law)**
**("NYSHRL")**

89.     Plaintiff, ANTHONY BENSON, on behalf of himself and the Class and New York City Sub-Classes Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

90.     At all times relevant to this action, the New York State Human Rights Law ("NYSHRL"), Article 15 of the New York Executive Law §§ 290 *et seq.*, covers the actions of the Defendants.

91.     Plaintiff, at all times relevant to this action, as a result of his loss of vision, has a substantial impairment to a major life activity and is an individual with a disability under Article 15 of N.Y. Executive Law § 292(21).

92.     Defendants, at all relevant times to this action, own and operate a place of public accommodation, the subject Website, within the meaning of Article 15 of N.Y. Executive Law § 292(9).  Defendant is a "person" within the meaning of Article 15 of N.Y. Executive Law § 292(1).

93.    Plaintiff has visited the Website on a number of occasions and has encountered barriers to his access that exist.

94.    Under Article 15 N.Y. Executive Law § 296(2)(a) "it shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodation ... because of the ... disability of any person, directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof."

95.    Discrimination includes the refusal to adopt and implement reasonable modifications in policies, practices, or procedures when they are necessary to afford facilities, privileges, advantages, or accommodations to individuals with disabilities. Article 15 of N.Y. Executive Law § 296(2)(a), § 296(2)(c)(i).

96.    Defendant's actions violate Article 15 of N.Y. Exec. Law § 296(2)(a) by discriminating against the Plaintiff and Subclass by (i) owning and operating a website that is inaccessible to disabled individuals who are sight-impaired and cannot discern the content thereof without the use of a screen-reading program; (ii) by not removing access barriers to its Website in order to make accessibility features of the sites known to disabled individuals who are sight-impaired; and (iii) by refusing to modify the Website when such modifications are necessary to afford facilities, privileges, advantages or accommodations to individuals with disabilities. This inaccessibility denies disabled individuals who are sight-impaired full, and equal access to the facilities, goods, and services that the Defendant makes available to individuals who are not disabled and can see without the need of a screen-reading program or other similar device. Article 15 of N.Y. Exec. Law § 296(2)(c).

97.     The Defendant's discriminatory practice also includes, "a refusal to take such steps as may be necessary to ensure that no individual with a disability is excluded or denied services because of the absence of auxiliary aids and services, unless such person can demonstrate that taking such steps would fundamentally alter the nature of the facility, privilege, advantage or accommodation being offered or would result in an undue burden." Article 15 of N.Y. Exec. Law § 296(2)(c).

98.     Established guidelines exist for making websites accessible to disabled individuals. The International Website Standards Organization, the Worldwide Consortium, known throughout the world as "W3C," has published version 2.1 of the Web Content Accessibility Guidelines ("WCAG 2.1").  WCAG 2.1 is well-established guideline for making websites accessible to the blind and visually impaired people. These guidelines are universally followed by most large business entities and government agencies to ensure websites are accessible.

99.     Defendant has intentionally and willfully discriminated against the Plaintiff and Subclass and violation of the New York State Human Rights Law, Article 15 of N.Y. Exec. Law § 296(2) and the discrimination continues to date.

100.    Absent injunctive relief, Defendant's discrimination will continue against Plaintiff and Subclass, causing irreparable harm.

101.    Plaintiff and the Subclass are therefore entitled to compensatory damages, civil penalties, and fines for every discriminatory act in addition to reasonable attorney fees and costs and disbursements of this action. Article 15 of N.Y. Exec. Law §§ 297(9), 297(4)(c) *et seq.*

**FOURTH CAUSE OF ACTION**
**(Violation of New York State Civil Rights)**
**("NYCRL")**

102.    Plaintiff, ANTHONY BENSON, on behalf of himself and the New York City Subclass Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

103.    Plaintiff served notice thereof upon the New York State Attorney General, as required by N.Y. Civil Rights Law § 41. (Exhibit 1) (Notice to Attorney General)

104.    Persons within New York State are entitled to full and equal accommodations, advantages, facilities, and privileges of places of public accommodations, resort or amusement, subject only to the conditions and limitations established by law and applicable alike to all persons. No person, being the owner of a place of public accommodation, shall directly or indirectly refuse, withhold from, or deny to any person any of the accommodations, advantages, facilities, and privileges thereof. N.Y. Civ. Rights Law § 40.

105.    No person because of disability, as defined in § 292(21) of the Executive Law, shall be subjected to any discrimination in his or her civil rights by person or by any firm, corporation, or institution, or by the state or any agency or subdivision. N.Y. Civ. Rights Law ("NYCRL") § 40-c.

106.    § 292 of Article 15 of the N.Y. Executive Law deems a disability a physical, mental, or medical impairment resulting from anatomical, physiological, genetic, or neurological conditions that prevent the exercise of a normal bodily function. As such, the Plaintiff is disabled under the N.Y. Civil Rights Law.

107.    Defendant discriminates against the Plaintiff and Subclass under NYCRL § 40 as

28

Defendant's Website is a place of public accommodation that does not provide full and equal accommodation, advantages, facilities, and privileges to all persons and discriminates against disabled individuals who are sight impaired.

108.    Defendant intentionally and willfully failed to remove the barriers on their Website, discriminating against the Plaintiff and Subclass preventing access in violation of NYCRL § 40.

109.    Defendant has failed to take any steps to halt and correct its discriminatory conduct and discriminate against the Plaintiff and the Subclass members.

110.    Under N.Y. Civil Rights Law § 41, "a corporation which violates any of the provisions of §§ 40, 40-a, 40-b or 42 shall be liable for a penalty of not less than one hundred dollars nor more than five hundred dollars, to be recovered by the person aggrieved thereby… in any court of competent jurisdiction in the county in which the plaintiff or defendants shall reside." *Id...*

111.    Plaintiff and the SubClass hereby demand compensatory damages of five hundred dollars ($500.00) for the Defendant's acts of discrimination, including civil penalties and fines under N.Y. Civil Law § 40 *et seq.*

## **FIFTH CAUSE OF ACTION**
### **(Declaratory Relief)**

112.    Plaintiff, ANTHONY BENSON, on behalf of himself and the Class and New York City Sub-Class Members, repeats and realleges every allegation of the preceding paragraphs as if fully set forth herein.

113.    An actual controversy has arisen and now exists between the parties in that Plaintiff contends, and is informed and believes that Defendant denies, that the Website contains access

barriers denying blind customers the full and equal access to the products, services and facilities of the Website, which Defendant owns, operates and controls, fails to comply with applicable laws including, but not limited to, Title III of the Americans with Disabilities Act, 42 U.S.C. §§ 12182, *et seq.*, and N.Y.C. Admin. Code § 8-107, *et seq*., prohibiting discrimination against the blind.

114.    A judicial declaration is necessary and appropriate at this time so that each of the parties may know its respective rights and duties and act accordingly.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court grant the following relief:

a.    A preliminary and permanent injunction to prohibit Defendant from violating the Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

b.    A preliminary and permanent injunction requiring Defendant to take all the steps necessary to make the Website fully compliant with the requirements set forth in the ADA, and the implementing regulations, so that the Website is readily accessible to and usable by blind individuals;

c.    A declaration that Defendant owns, maintains and/or operates the Website in a manner that discriminates against the blind and which fails to provide access for persons with disabilities as required by Americans with Disabilities Act, 42 U.S.C. §§ 12182, et seq., N.Y.C. Administrative Code § 8-107, et seq., and the laws of New York;

d.    An order certifying the Class and Sub-Classes under Fed. R. Civ. P. 23(a) & (b)(2) and/or (b)(3), appointing Plaintiff as Class Representative, and Plaintiff's attorneys as Class Counsel;

e.    Compensatory damages in an amount to be determined by proof, including all applicable statutory and punitive damages and fines, to Plaintiff and the proposed class and subclasses for violations of civil rights under New York City Human Rights Law, the New York State Human Rights Law and the New York State Civil Rights Law;

f.    Pre-judgment and post-judgment interest;

g.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

h.    Such other and further relief as this Court deems just and proper.

**<u>DEMAND FOR TRIAL BY JURY</u>**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury on all questions of fact the Complaint raises.

Dated: New York, New York
          September 22, 2025

Respectfully submitted,

**JOSEPH & NORINSBERG, LLC**

<u>/s/ Robert Schonfeld</u>
Robert Schonfeld, Esq
*Attorneys for Plaintiff*
825 Third Avenue, Suite 2100
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
rschonfeld@employeejustice.com

31